IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>JEFFREY JAVONTAE KNIGHT, )<br>a/k/a "Jefe," )<br>)<br>Defendant.  ) | The Honorable Elizabeth K. Dillon<br>Case No. 7:24-CR-00020 |

**UNITED STATES' SENTENCING MEMORANDUM**

On December 12, 2024, the defendant, Jeffrey Javontae Knight, pled guilty to possessing with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). He will appear before the Court on April 7, 2025, for sentencing. For the reasons set forth below, the United States respectfully requests the Court sentence Mr. Knight to 174 months' imprisonment, a sentence within his agreed-upon sentencing range that is also near the lower end of his guidelines range.

**I.     GENERAL LEGAL STANDARD FOR SENTENCES**

In determining an appropriate sentence, the Court must consider the sentencing factors listed in 18 U.S.C. § 3553(a), which encompass:

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

*See Rita v. United States*, 551 U.S. 338, 347–48 (2007). The Court "shall impose a sentence sufficient, but not greater than necessary, to" achieve the aims federal sentencing. § 3553(a).

In fashioning such a sentence, "the [United States Sentencing] Guidelines remain the foundation of federal sentencing decisions." *Hughes v. United States*, 584 U.S. 675, 685 (2018). While they are not mandatory, *Rita*, 551 U.S. at 354, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007). "[T]he Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016). Thus, "district courts must . . . remain cognizant of [the Guidelines] throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

Still, while being mindful of the Guidelines' central framework, "the district court must make an individualized [sentencing] assessment based on the facts presented." *United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019). In making this individualized assessment, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] . . . which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010) ("[A] sentencing court may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy.").

Where a district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. . . . [A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. "[T]he method of deviation from the Guidelines range— whether by a departure or by varying—is irrelevant so long as at least one rationale is justified and reasonable." *United States v. Diosdado-Star*, 630 F.3d 359, 365–66 (4th Cir. 2011).

## II. THE SALIENT SENTENCING FACTORS

The § 3553(a) sentencing factors strongly support a 174-month sentence, which falls near the lower end of Mr. Knight's guidelines range of 168 to 210 months.

### A. The nature and circumstances of the offense (§ 3553(a)(1))

Flatly stated, until his arrest, Mr. Knight was a chronic, mid-to-largescale drug trafficker, who brought at least one gun into the mix. Knight was caught with nearly a half-pound of pure methamphetamine and an ounce of several fentanyl/xylazine mixtures. Fentanyl is a dangerous opioid, and xylazine is a strong sedative. Former DEA Administrator Anne Milgram stated, "Xylazine is making the deadliest drug threat our country has ever faced, fentanyl, even deadlier." DEA, *DEA Reports Widespread Threat of Fentanyl Mixed with Xylazine*, https://www.dea.gov/alert/dea-reports-widespread-threat-fentanyl-mixed-xylazine.

Knight's phone messages document that for months he sold up to ounces of meth at a time, as well as distribution quantities of opioids, out of his hotel room in

3

Roanoke County. During this time, Knight also kept a .357 Magnum revolver with a scratched-off, indecipherable serial number in his room. In one exchange, Knight offered the revolver to another person who asked for weapons because "we at war." Prior to that, Knight was brokering pound-level drug sales out of Pulaski County.



In sum, the nature and circumstances of the offense are serious, involving sales of pure meth and a deadly opioid concoction—with at least one gun in the midst.

B.  **Mr. Knight's history and characteristics (§ 3553(a)(1))**

Mr. Knight's presentence investigation report ("PSR") describes an upbringing with some challenges, but overall free from severe trauma or privation. At core, "[Knight] was never physically or sexually abused, and no one in his immediate family abused drugs or alcohol." PSR ¶ 62. To be sure, he lost his mom at a young

4

age, she was incarcerated for a time before that, and he was not close to his father. *Id.* Nevertheless, Mr. Knight's childhood would be enviable to some defendants who come before the Court.

As an adult, however, Mr. Knight chose the life of a drug trafficking. He sold drugs from at least as early as 2018, at the age of 20, from marijuana to cocaine to heroin, culminating in the instant charges involving large amounts of pure, crystal methamphetamine and dangerous fentanyl mixtures. *See id.* ¶¶ 41–42. These drug sales were doubtless exacerbated by his own opioid addiction. *See id.* ¶ 68.

### C. The need for just punishment, deterrence, and protection (§ 3553(a)(2))

Sentences must "reflect the seriousness of the offense"; "promote respect for the law"; "provide just punishment for the offense"; "afford adequate deterrence to criminal conduct"; and " protect the public from further crimes of the defendant." *See* § 3553(a)(2)(A)–(C). A 174-month prison sentence will accomplish these goals.

Despite incurring repeated, serious felony convictions, no court has sentenced Knight to more than 7 months' incarceration. This is in spite of the fact that Knight also repeatedly committed new crimes while on felony probation.

In the instant offense, Mr. Knight spread tens of thousands of dollars' worth of deadly poison into Roanoke County. If the Pulaski County conduct is also considered, that number rises to hundreds of thousands of dollars' worth of drugs.

There can simply be no doubt that Knight would continue to destroy his own life and the lives of his "customers" if the trend of light sentences continued.

5

Slaps on the wrist have been tried and found wanting. To reflect the seriousness of his offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the community, the United States respectfully requests the Court impose a sentence of 174 months' imprisonment.

## III. SENTENCING WITNESSES AND EXHIBITS

Given the PSR's thorough, unrefuted fact narrative, the United States does not intend to call witnesses or offer exhibits at Mr. Knight's sentencing hearing. However, it reserves the right to do so to rebut any evidence presented by Mr. Knight.

Respectfully submitted,

ZACHARY T. LEE
Acting United States Attorney

/s/ *Drew O. Inman*

DREW O. INMAN
PA Bar No. 328494
Assistant United States Attorney
P.O. Box 1709
Roanoke, VA 24008-1709
540-857-2250 (Office)
540-857-2614 (Fax)
drew.inman@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF, which notifies all counsel of record.

/s/ *Drew O. Inman*
Assistant United States Attorney